UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
                              )
                              )
          v.                  )
                              )
                              )
JAMES COLLINS,            )
ROBERT DIMEO, and       )
MICHAEL WALSH         )

**No. 20 CR 232**

**JUDGE GUZMAN**

**MAGISTRATE JUDGE VALDEZ**

Violation: Title 18, United States
Code, Section 1341

**FILED**

MAY 1 3 2020

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

### COUNT ONE

The SPECIAL JANUARY 2019 GRAND JURY charges:

1.    At times material to this Indictment:

    a.    Defendants JAMES COLLINS and ROBERT DIMEO were residents of Illinois. They operated an entity known as Honor Finance Corporation, and later operated an entity known as Honor Finance, LLC.

    b.    Defendant MICHAEL WALSH was a resident of Illinois. WALSH was an accountant who operated his own accounting firm. WALSH performed accounting and other services for entities owned, operated, and/or controlled by defendants JAMES COLLINS and ROBERT DIMEO.

    c.    Private Equity Firm A was a Delaware corporation with its principal offices in Chicago. Private Equity Firm A was engaged in the

business of, among other things, investing in and directing the management of other business entities.

    d.    Honor Finance Corporation was a Delaware corporation with its principal place of business in Evanston, Illinois. Honor Finance Corporation was engaged in the business of sub-prime automobile financing. Defendants JAMES COLLINS and ROBERT DIMEO were officers of Honor Finance Corporation.

    e.    Honor Finance, LLC was a limited liability company that was established by Private Equity Firm A in 2011, for the purpose of purchasing certain assets of Honor Finance Corporation. Honor Finance, LLC was engaged in the business of sub-prime automobile financing.

    f.    In about October 2011, Honor Finance, LLC purchased from Honor Finance Corporation a portfolio of loans, pursuant to an Asset Purchase Agreement. However, under the Asset Purchase Agreement, Honor Finance, LLC did not purchase all of the loans Honor Finance Corporation held in its portfolio, instead leaving Honor Finance Corporation with certain loans that Honor Finance Corporation still owned and serviced. Defendants JAMES COLLINS and ROBERT DIMEO were officers and shareholders of Honor Finance, LLC after the execution of the Asset Purchase Agreement. JAMES COLLINS was the Chief Executive Officer of Honor Finance, LLC, and ROBERT DIMEO was its Chief Operating Officer.

g.  Honor Capital, LLC was an Illinois corporation that was established by defendant JAMES COLLINS in or about June 2010. With the agreement of Honor Finance Corporation, Honor Finance, LLC, and Private Equity Firm A, the purpose of Honor Capital was to service and collect on the loans still held by Honor Finance Corporation after the execution of the Asset Purchase Agreement. Defendant MICHAEL WALSH was the registered agent of Honor Capital.

h.  LHS Solutions was an Illinois corporation that was established in September 2011 by defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH, without the knowledge or approval of Private Equity Firm A.  Defendant MICHAEL WALSH was listed as LHS Solutions' President.

i.  Honor Finance, LLC required that Global Positioning Satellite ("GPS") devices be installed in certain vehicles purchased with loans held by Honor Finance, LLC as a means of locating and repossessing vehicles if the borrowers on loans held by Honor Finance, LLC were in default on those loans.

j.  GPS Seller A was in the business of selling GPS devices that could be installed in vehicles, along with vehicle tracking and recovery software applications and platforms. GPS Seller A had no offices in the state of Illinois.

3

k. Vehicle Warranty Issuers A, B, C, and D issued warranty policies that were sold through Honor Finance, LLC on vehicles financed by loans held by Honor Finance, LLC. Vehicle Warranty Issuers A, B, C, and D paid commissions to entities, including those designated by Honor Finance, LLC, in return for selling their policies.

l. 49 Salem Lane, LLC was a limited liability company that was owned and controlled by defendants JAMES COLLINS and MICHAEL WALSH, and which owned a property at 1731 Central Street, in Evanston, Illinois.

m. BGB Management, LLC was a limited liability company that was owned and controlled by defendants JAMES COLLINS and MICHAEL WALSH, and which owned properties at 910 Lake Street, in Evanston, Illinois, and 50001 West Lakeshore Drive, in Dowagiac, Michigan.

2. Beginning no earlier than in or about October 2011, and continuing until no earlier than in or about May 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

3. It was part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH fraudulently misappropriated at least about $5.3 million from Honor Finance, LLC by diverting to LHS Solutions money owing to Honor Finance, LLC. Specifically, COLLINS, DIMEO, and WALSH:

    a. Caused LHS Solutions, an entity they created and controlled, to purchase GPS devices from GPS Seller A and then resell those GPS devices to Honor Finance, LLC at a significant markup, with LHS Solutions keeping the markup.

    b. Caused Vehicle Warranty Issuers A, B, C, and D to send commission payments on Honor Finance, LLC's sale of vehicle

warranties to LHS Solutions, rather than to Honor Finance, LLC.

### The Markup on GPS Devices

4.   It was further part of the scheme that at around the time the Asset Purchase Agreement was executed, defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH established LHS Solutions, an entity that had no legitimate business purpose. They established and controlled LHS Solutions without informing Private Equity Firm A or other members of Honor Finance, LLC's Board of Directors, because they did not want them to know of its existence and their relationship with it.

5.   It was further part of the scheme that at around the time the Asset Purchase Agreement was executed, defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH caused GPS Seller A, which previously had sold GPS devices directly to Honor Finance Corporation, instead to sell the GPS devices to LHS Solutions, which they falsely told GPS Seller A was a distributor of GPS devices.

6.   It was further part of the scheme that defendant ROBERT DIMEO directed GPS Seller A to create and send invoices for the GPS devices that listed LHS Solutions as the party to which to bill for the GPS devices (the "Bill-To" party), while listing Honor Finance, LLC as the party to which to ship the

GPS devices (the "Ship-To" party), when DIMEO knew that LHS Solutions was not a real distributor of GPS devices.

7.     It was further part of the scheme that after receiving invoices from GPS Seller A for GPS devices, defendants JAMES COLLINS, ROBERT DIMEO and MICHAEL WALSH caused the creation of invoices from LHS Solutions to Honor Finance, LLC for those same GPS devices, adding a significant markup on the price that GPS Seller A had charged to LHS Solutions. DIMEO, WALSH, and COLLINS knew that the LHS Solutions invoices to Honor Finance, LLC were created and issued for the purpose of hiding from others at Honor Finance, LLC and Private Equity Firm A that Honor Finance, LLC was being charged a significant markup on the GPS devices that was without any legitimate basis.

8.     It was further part of the scheme that defendant ROBERT DIMEO used his personal credit cards to pay GPS Seller A for most of the GPS devices purchased in the name of LHS Solutions, even though the invoices purported to be billed to LHS Solutions. DIMEO caused Honor Finance LLC to issue payments to LHS Solutions in the amount of the marked up purchase price that LHS Solutions billed to Honor Finance, LLC. DIMEO AND WALSH then caused LHS Solutions to make payments to DIMEO's credit card providers to pay the credit card expenses DIMEO had incurred by purchasing

those GPS devices. After DIMEO's credit card bills were paid, LHS Solutions was then left with the amount of the markup, representing the amount of money COLLINS, DIMEO, and WALSH had misappropriated from Honor Finance LLC.

9. It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH concealed from others at Honor Finance, LLC and Private Equity Firm A that they had created and did control LHS Solutions and that they caused it to act as a distributor of GPS devices between GPS Seller A and Honor Finance, LLC, because they knew LHS Solutions served no legitimate function as a distributor and served only as a means to misappropriate money from Honor Finance, LLC, and they believed others at Honor Finance, LLC and Private Equity Firm A would have rejected such an arrangement.

10. During the several years defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH misappropriated funds from Honor Finance, LLC through the use of LHS Solutions as a purported distributor of GPS devices to Honor Finance, LLC, defendants misappropriated approximately $3.1 million from Honor Finance, LLC in this way.

## The Diversion of Vehicle Warranty Commissions

11. It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH caused Vehicle Warranty Issuers A, B, C, and D to send commissions on the sales of vehicle warranty contracts to LHS Solutions and to other entities controlled by COLLINS, DIMEO, and WALSH, rather than to Honor Finance, LLC, when COLLINS, DIMEO, and WALSH knew that Honor Finance, LLC was entitled to the commissions.

12. It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH concealed from others at Honor Finance LLC and Private Equity Firm A that they had created and did control LHS Solutions, and that commissions owing to Honor Finance, LLC were being diverted to LHS Solutions and to other entities controlled by COLLINS, DIMEO and WALSH.

13. During the several years defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH misappropriated funds from Honor Finance, LLC through the use of LHS Solutions as the recipient of commissions from Vehicle Warranty Issuers A, B, C, and D, defendants misappropriated approximately $2.2 million from Honor Finance, LLC in this way.

<u>Disposition of the Misappropriated Funds</u>

14.     It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH used the funds misappropriated from Honor Finance, LLC to benefit themselves, including by paying off loans and lines of credit that Private Equity Firm A and Honor Finance LLC had not purchased as part of the Asset Purchase Agreement and for which Honor Finance Corporation was still responsible, and by transferring money to other entities they controlled, and to themselves and their family members.

15.     It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH caused approximately $2.8 million of funds that had been misappropriated from Honor Finance, LLC to be transferred from LHS Solutions' account to Honor Capital's account, then used those funds to pay down loans and lines of credit that Honor Finance, LLC and Private Equity Firm A had not purchased under the Asset Purchase Agreement and for which Honor Finance Corporation was still responsible. COLLINS, DIMEO, and WALSH concealed from others at Honor Finance, LLC and Private Equity Firm A the use of these misappropriated funds, because they believed funds of Honor Finance, LLC could not be used to pay off Honor Finance Corporation's debts.

16.   It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH caused approximately $800,000 in funds that had been misappropriated from Honor Finance, LLC to be transferred from LHS Solutions' account to the accounts of 49 Salem Lane and BGB Management, LLC, entities that COLLINS and DIMEO owned and controlled.

17.   It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH caused the creation of lease agreements purportedly between LHS Solutions and BGB Management, LLC for three different properties as a means to mask their personal use of funds misappropriated from Honor Finance, LLC, knowing that LHS Solutions conducted no legitimate business activities and required no office space.

18.   It was further part of the scheme that defendants JAMES COLLINS, ROVERT DIMEO, and MICHAEL WALSH caused at least approximately $80,000 in funds that had been misappropriated from Honor Finance, LLC to be used to pay for a down payment on a lake house in Dawogiac, Michigan, purchased in the name of BGB Management, LLC, even though the lake house was for their personal use.

19.   It was further part of the scheme that defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH misrepresented,

11

concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

20.     As a result of the scheme, defendants JAMES COLLINS, ROBERT DIMEO, and MICHAEL WALSH fraudulently misappropriated approximately $5.3 million from Honor Finance LLC.

21.     On or about August 20, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Evanston, Illinois, by FedEx, a commercial interstate carrier, 120 GPS devices sold by GPS Seller A to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.    The allegations in paragraphs 1-20 of Count One are incorporated here.

2.    On or about August 31, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Evanston, Illinois, by FedEx, a commercial interstate carrier, 100 GPS devices sold by GPS Seller A to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

13

## COUNT THREE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations in paragraphs 1-20 of Count One are incorporated here.

2.     On or about September 8, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Evanston, Illinois, by FedEx, a commercial interstate carrier, 100 GPS devices sold by GPS Seller A to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT FOUR

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.    The allegations in paragraphs 1-20 of Count One are incorporated here.

2.    On or about September 18, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Evanston, Illinois, by FedEx, a commercial interstate carrier, 100 GPS devices sold by GPS Seller A to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT FIVE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.　　The allegations in paragraphs 1-20 of Count One are incorporated here.

2.　　On or about September 25, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Evanston, Illinois, by FedEx, a commercial interstate carrier, 120 GPS devices sold by GPS Seller A to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT SIX

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations in paragraphs 1-20 of Count One are incorporated here.

2.     On or about August 10, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Skokie, Illinois, by FedEx, a commercial interstate carrier, a check in the amount of $25,800 issued by Vehicle Warranty Issuer A and made payable to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT SEVEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations in paragraphs 1-20 of Count One are incorporated here.

2.     On or about August 17, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Skokie, Illinois, by FedEx, a commercial interstate carrier, a check in the amount of $26,800 issued by Vehicle Warranty Issuer A and made payable to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT EIGHT

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations in paragraphs 1-20 of Count One are incorporated here.

2.     On or about June 12, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Skokie, Illinois, by FedEx, a commercial interstate carrier, a check in the amount of $10,100 issued by Vehicle Warranty Issuer A and made payable to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT NINE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.      The allegations in paragraphs 1-20 of Count One are incorporated here.

2.      On or about June 21, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Skokie, Illinois, by FedEx, a commercial interstate carrier, a check in the amount of $9,275 issued by Vehicle Warranty Issuer A and made payable to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## COUNT TEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.      The allegations in paragraphs 1-20 of Count One are incorporated here.

2.      On or about September 20, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES COLLINS,
ROBERT DIMEO, and
MICHAEL WALSH,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be delivered to Skokie, Illinois, by FedEx, a commercial interstate carrier, two checks—one in the amount of $5,740 and another in the amount of $16,200—issued by Vehicle Warranty Issuer A and made payable to LHS Solutions;

In violation of Title 18, United States Code, Section 1341.

## FORFEITURE ALLEGATIONS

The SPECIAL JANUARY 2019 GRAND JURY further alleges:

1.     The allegations of Counts One through Ten are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(c).

2.     As a result of the violations as alleged in Counts One through Ten of the foregoing indictment,

JAMES COLLINS

ROBERT DIMEO, and

MICHAEL WALSH

defendants herein, shall forfeit to the United States any and all right, title, and interest they may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offenses charged in Counts One through Ten.

3.     The interests of defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code, Section 2461(c), include, but are not limited to:

a. The real property commonly known as 50001 W. Lakeshore Drive, Dowagiac, Michigan, 49047.

    b.  A personal money judgment in the amount of approximately $5.3 million.

4.      If any of the forfeitable property described above, as a result of any act or omission by defendants:

    (a)    Cannot be located upon the exercise of due diligence;

    (b)    Has been transferred or sold to, or deposited with, a third party;

    (c)    Has been placed beyond the jurisdiction of the court;

    (d)    Has been substantially diminished in value; or

    (e)    Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY